Louis Anthony MANNA, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE and Drug Enforcement Administration, Defendants.**

Civ. A. No. 92–2772.

United States District Court,
D. New Jersey.

Sept. 15, 1993.

Louis A. Manna, pro se.

United States Atty., Newark, NJ, Robert M. Hanna, for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Plaintiff *pro se* Louis Anthony Manna ("Manna") commenced this action against defendants United States Department of Justice ("DOJ") and the Drug Enforcement Administration ("DEA")[1] pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to obtain certain records in the possession of the DEA. Specifically, plaintiff seeks any records "in reference to the plaintiff or any records making reference to the plaintiff." Compl. at ¶ 1.

Before me now are the following motions: 1) Manna's motion to "reopen the case"; 2) defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56; 3) Manna's cross-motion for partial summary judgment pursuant to Fed.R.Civ.P. 56;[2] and 4) Manna's motion to strike a declaration submitted by the defendants in support of their summary judgment motion.

For the reasons set forth below, Manna's motion to reopen the case is granted, defendants' motion for summary judgment is granted except as to information designated in the defendants' *Vaughn* itemization as

1. The DEA is a component agency of the DOJ.

2. Manna's cross-motion is essentially an opposition to the defendants' motion for summary judg-

"personal information" and "internal markings," Manna's cross-motion for partial summary judgment is denied, and Manna's motion to strike defendants' declaration is denied.

## I. Summary Judgment Standard

Summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dism'd,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital,* 843 F.2d 139, 143 (3d Cir.1988), *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

Within the framework set out above, the moving party essentially bears two burdens. First, there is the burden of production, of making a prima facie showing that it is entitled to summary judgment. This may be done either by demonstrating that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or by demonstrating that the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each ele-

ment as he argues that there are material issues of fact in dispute precluding summary judgment.

ment for which it bears the burden as well as establish the existence of genuine issues of material fact. Second, there is the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); Advisory Committee's Notes on Fed.Rule of Civ.Pro. 56(e), 1963 Amendment; *see generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983).

■ Summary judgment is typically used to adjudicate FOIA cases. *Struth v. F.B.I.,* 673 F.Supp. 949, 953 (E.D.Wis.1987). Moreover, a district court may award summary judgment on the basis of agency affidavits alone where the affidavits are sufficiently detailed and are submitted in good faith. *See Simmons v. United States Dep't of Justice,* 796 F.2d 709, 711–712 (4th Cir.1986) (*citing Goland v. C.I.A.,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

## II. FOIA Framework

FOIA provides citizens access to government information, thereby insuring an informed citizenry, *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978), and "was enacted in furtherance of the belief that 'an informed electorate is vital to the proper operation of a democracy.'" *Coastal States Gas Corp. v. Department of Energy,* 644 F.2d 969, 974 (3d Cir.1981) (*quoting* S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)).

■ Under FOIA, a government agency must promptly release agency documents, upon request, subject to nine specific statutory exemptions. *Id.* These statutory exemptions are exclusive and must be narrowly construed. *Department of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Moreover, an entire document is not exempt from release merely because a portion is exempt. *Vaughn v. Rosen,* 484 F.2d 820, 825 (D.C.Cir.1973), *cert.*

denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). "Any reasonably segregable, non-exempt portion of a record is to be made available to the person requesting that record." *Lame v. United States Dep't of Justice,* 654 F.2d 917, 921 (3d Cir.1981).

■ If the agency fails to release the requested information, and all administrative remedies have been exhausted, the individual seeking the information can obtain review of the agency's denial in federal district court. *Lame,* 654 F.2d at 921. The court must review the agency's decision to withhold requested documents *de novo,* and the burden is on the agency to justify its action. *See* 5 U.S.C. § 552(a)(4)(B); *Lame,* 654 F.2d at 921.

## III. Factual and Procedural Background

### A. Facts

Plaintiff is a former high-ranking member of a powerful Mafia crime family known as the Genovese Crime Family. *Manna v. United States Dep't of Justice,* 815 F.Supp. 798, 802 (D.N.J.1993).[3] In 1989, Manna was convicted in the United States District Court for the District of New Jersey of various federal crimes relating to his organized crime activity. *See United States v. Manna,* Crim. Act. No. 88–239 (D.N.J.). Specifically, Manna was convicted of various offenses under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") involving predicate violations of the Hobbs Act (extortion) and the Taft–Hartley Act (bribery), organized gambling and three murders. Manna was sentenced to prison for a term of 80 years and received a fine in the amount of $250,000. *See* Judgment Including Sentence Under the Sentencing Reform Act, *United States v. Manna,* Crim.Act. No. 88–239 (D.N.J. Oct. 12, 1989), *aff'd without opinion,* 919 F.2d 733 (3d Cir.1990), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1418, 113 L.Ed.2d 471 (1991). Manna now seeks to obtain records in the possession of the DEA in an effort to obtain information to overturn his conviction.

---

3. For a background of Manna's criminal activi-

ties, see *Manna,* 815 F.Supp. at 802.

On February 11, 1991, Manna sent a request to the DEA for documents pursuant to FOIA and the Privacy Act of 1974, 5 U.S.C. § 552a.[4] The request seeks "a copy of all electronic surveillance information contained within any set of records, including computers, wherein [Manna has] been subject to any type of electronic surveillance, either legal or illegal." On February 27, 1992, the DEA informed Manna that he had never been the subject of a DEA investigation but that his name was mentioned in nine related files, that is, non-subject files, maintained by the DEA. By letter dated March 5, 1991, Manna requested that the nine files be searched and also expanded his original request to include all information about Manna "from any source within any system of records maintained by the [DEA]."

By letter dated October 25, 1991, the DEA informed Manna that his request had been processed and that a determination had been made to release a portion of the requested information upon receipt of payment of the balance of search fees assessed by the DEA. After receiving the requested payment, the

DEA released portions of various documents on December 17, 1991. The DEA also informed Manna that it was withholding certain information pursuant to FOIA exemptions 2, 5, 7(C), 7(D), and 7(F),[5] and Privacy Act exemption j(2).[6] It also indicated that certain DEA files contained information furnished by another government agency and that Manna's request for that information had been referred to that agency for a decision as to access.[7] Manna was advised that the agency would respond to him directly.

On December 23, 1991, Manna appealed the DEA's decision to the Office of Information and Privacy ("OIP"), Department of Justice. On May 27, 1992, OIP informed Manna that he was entitled to a supplemental release of records from the DEA, but that the decision of the DEA was otherwise affirmed. The OIP informed Manna that the material continued to be withheld was exempt pursuant to Privacy Act exemption j(2) and FOIA exemptions 2, 7(C), 7(D), and 7(F). The DEA made the supplemental release of documents on June 2, 1992.[8]

4. The Privacy Act provides individuals access to records pertaining to them that are maintained by the federal government.

5. Exemption 2 exempts from disclosure matters that are "related to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 7(C) exempts "records or information compiled for law enforcement purposes ... to the extent that the production ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(D) exempts "records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, and in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Exemption 7(F) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

6. Section j(2) exempts from disclosure material in the possession of criminal law enforcement agencies compiled for the purpose of a criminal investigation. 5 U.S.C. § 552a(j)(2). Even if documents are exempt under Section j(2), the agency must nevertheless disclose the document if it is otherwise accessible under the provisions of FOIA. 5 U.S.C. § 552a(t)(2). Thus, when Section j(2) requires withholding of information, an agency must also process the request under FOIA.

7. When a component agency of the DOJ receives a request for documents under the Privacy Act, the receiving agency is primarily responsible for responding to the document. 28 C.F.R. § 16.42(a). If, however, the request pertains to a record relating to a criminal investigation or to a criminal law enforcement proceeding, and the record was generated by an agency other than the receiving agency, the receiving agency is required to consult the other agency before responding to the request. 28 C.F.R. § 16.42(c), (d).

8. On December 16, 1991, Manna filed a separate document request with the DEA's New York field office, seeking access to information on electronic surveillance conducted on his residence in 1986. According to the declaration submitted by the DEA in this action, the DEA's filing system is centrally located at its headquarters in Washington, D.C., and, thus, any documents responsive

The DEA submitted the Declaration of William E. Bordley, DEA Attorney Advisor ("Bordley Declaration"),[9] as its "Vaughn Index."[10] Exhibit Q to the Bordley Declaration contains a page-by-page itemization of the exemptions relied upon by the DEA. According to the Declaration, the DEA located a total of 29 pages in its files in which Manna's name is mentioned. The DEA withheld 24 pages in their entirety and released 5 pages in redacted form. Specifically, the DEA withheld the following types of information pursuant to the following FOIA exemptions.

Pursuant to Exemption 2, the DEA redacted all "violator identifiers," that is, codes used by the DEA to facilitate administrative and record-keeping procedures. These codes refer to such matters as the priority of DEA narcotics investigations, types of criminal activities, geographic areas, types of controlled substances involved, and violator ratings.[11] According to the DEA, disclosure of these internal codes would help identify particular narcotics investigations and impede the DEA's investigative and enforcement efforts. The DEA also withheld what is characterized in its *Vaughn* itemization as "internal markings."

Pursuant to Exemption 7(C), the DEA withheld the identities of persons who were implicated, involved or associated with an individual who was investigated by the DEA. According to the DEA, disclosure of the names, descriptions or other personal information about such individuals could cause undue harassment and/or physical harm to those individuals and would constitute an unwarranted invasion of privacy. In some instances, the DEA withheld the titles of criminal case files which would identify targets suspected of illegal drug activity.

Pursuant to Exemption 7(D), the DEA withheld the identities of and information supplied by local law enforcement personnel who cooperated with DEA. According to the Bordley Declaration, "[t]hese law enforcement sources knowingly provided DEA agents with intelligence information under circumstances where it was plainly implied that their identities and the information would be held in maximum confidence." ¶ 25. According to the DEA, any release of information that could identify these individuals would constitute an invasion of privacy, subject them to harassment and danger, and would thwart the DEA's future investigative efforts.

Finally, the DEA withheld the identities of DEA special agents, supervisory special agents and other law enforcement officers pursuant to Exemption 7(F).

## B. Procedural History

As noted above, this matter came before the court on the defendants' motion for summary judgment, Manna's cross-motion for partial summary judgment, and Manna's motion to strike the Bordley Declaration. On May 3, 1993, this court administratively

---

to Manna's December 16, 1991 request were encompassed by his original request dated February 11, 1991, as well as his expanded request of March 5, 1991.

9. Manna made a motion to strike the Bordley Declaration on the ground that Mr. Bordley is blind and that his declaration states that he has "reviewed" the material for this case. Manna seems to argue that because Bordley cannot personally review documents, the DEA should have submitted supplemental declarations attesting to what records were read to Bordley and what information was made available to him by staff members that enabled him to make his declaration. Manna's motion is meritless. The DEA was not required under FOIA to demonstrate how Mr. Bordley's staff assisted him in preparing his declaration. Manna's motion to strike the Bordley Declaration is, therefore, denied.

10. A *"Vaughn* index" is an affidavit that contains an index of the documents withheld and details the agency's justifications for its claimed exemptions. *Patterson v. F.B.I.,* 893 F.2d 595, 599 n. 7 (3d Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

11. Specifically, there are two types of violator identifiers at issue in this case: 1) "G–DEP" codes and 2) "NADDIS" numbers. According to the Bordley Declaration, G–DEP (Geographical Drug Enforcement Program) codes are assigned to all DEA cases and include the descriptive classification of the violator, the types and amounts of suspected drugs involved and the suspected location of criminal activity. NADDIS (Narcotics and Dangerous Information System) numbers are assigned to drug violators and suspected drug violators in whom the DEA has an investigative interest.

stayed those motions pending a decision by the United States Supreme Court reviewing a Third Circuit decision, *Landano v. United States Dep't .of Justice,* 956 F.2d 422 (3d Cir.1992), on the scope of one of the FOIA exemptions relevant in this case, Exemption 7(D). The Supreme Court has since handed down the decision, *see United States Dep't of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993),[12] and Manna's motion to reopen the case on that basis is, therefore, granted. I will now consider the remaining motions.

IV. Discussion

A. Sufficiency of *Vaughn* Index

Manna argues that the *Vaughn* index submitted with the Bordley Declaration is inadequate in that it does not provide a detailed justification for the exemption claimed and does not identify the reasons why a particular exemption is relevant to the withheld record. He also argues that the records were not described in sufficient detail.

A court faced only with an agency's claim that documents are exempt cannot conduct a meaningful review of the agency's decision to withhold those documents. *Hinton v. United States Dep't of Justice,* 844 F.2d 126, 129 (3d Cir.1988). The requester's ability to challenge the agency's decision is also seriously hindered. *Id.* Courts have therefore adopted procedures intended to promote efficient judicial review, allow informed adversarial argument, and discourage conclusory claims of exemption. *Lame,* 654 F.2d at 921. Specifically, in *Vaughn v. Rosen,* the Court of Appeals for the District of Columbia set forth specific procedures to enable courts to determine the validity of the agency's claim of exemption without physically examining each document. 484 F.2d 820 (D.C.Cir.1973); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980). These *Vaughn* procedures have been adopted by the Third Circuit. *Hinton,* 844 F.2d at 129; *Lame,* 654 F.2d at 921.

Under *Vaughn,* an agency is generally required to submit an affidavit setting forth an index of the documents withheld cross-referenced to the relevant portion of the Government's justification. *See Patterson v. F.B.I.,* 893 F.2d 595, 599 n. 7 (3d Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Vaughn,* 484 F.2d at 827. This *Vaughn* index must be sufficiently detailed to permit the trial court and requester to obtain a "clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Hinton,* 844 F.2d at 129. However, there is no set formula for a *Vaughn* index. *Id.* at 128. "All that is required . . . is that the requester and trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Id.* at 129. "Courts have generally accepted the use of 'coded' indices—in which agencies break certain FOIA exemptions into several categories, explain the particular nondisclosure rationales for each category, and then correlate the exemption and category to the particular documents at issue." *Manna,* 815 F.Supp. at 816–17.

As noted above, the DEA submitted the Bordley Declaration, as well as a page-by-page itemization of the exemptions relied upon by the DEA. The Bordley Declaration generally describes the exemptions relied on and how the exemptions relate to the documents withheld. The page-by-page itemization describes the type of document withheld, generally subdivides each document into segments, and indicates the type of material withheld, correlated to the exemption being claimed by the defendants for that particular document or segment thereof. I therefore find the *Vaughn* index generally acceptable, with two exceptions. As will be discussed in further detail below, the DEA did not describe with sufficient specificity withheld material labelled "personal information" and "internal markings." If the defendants wish to continue withholding this information, a

---

**12.** The Supreme Court vacated the Third Circuit's decision with respect to Exemption 7(D). The remaining aspects of the decision, however, were not disturbed on appeal. *See* discussion *supra.*

more detailed *Vaughn* submission must be made.[13]

## B. *In Camera* Review

Manna also argues that the government has acted in bad faith and requests that the court review the withheld documents *in camera.*

■ As recognized by the Third Circuit, "in the ordinary case, a *Vaughn* index correlating justifications for nondisclosure with the particular portions of the documents requested will generally suffice to narrow the disputed issues and permit a reasoned disposition by the district court." *Lame,* 654 F.2d at 922. In certain unusual cases, however, preparation of a sufficiently detailed affidavit might disclose the very information an agency seeks to withhold. *Patterson,* 893 F.2d at 599. In such situations, *in camera* review of a more detailed affidavit, or of the documents themselves, may be warranted. *Id.*[14] Nevertheless, *in camera* review is generally disfavored. *See, e.g., Schiller v. N.L.R.B.,* 964 F.2d 1205, 1209 (D.C.Cir.1992); *Center for Auto Safety v. E.P.A.,* 731 F.2d 16, 23 (D.C.Cir.1984). As the Court of Appeals for the D.C. Circuit has stated, " 'when the agency meets its burden [under FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate.' " (*quoting Weissman v. C.I.A.,* 565 F.2d 692, 696–97 (D.C.Cir. 1977)). Specifically, *in camera* review is not warranted where the affidavits demonstrate with reasonable specificity why the documents are exempt, if the government's claim of exemption is not contradicted in the record, and there is no evidence of bad faith on the part of the agency. *Id.* at 22 (*quoting Hayden v. National Security Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980)).

■ Here, I find that the Bordley Declaration and *Vaughn* itemization satisfy these principles except with respect to the informa-

tion characterized as "personal information" and "internal markings." With the exception of this information, the declaration demonstrates with reasonable specificity why the documents are exempt. There is nothing in the record to contradict the government's representations. Nor is there anything in the record to indicate that the defendants have acted in bad faith. Therefore, with regard to the information which was described with sufficient specificity, I find that *in camera* inspection of the records is not warranted in this case. With regard to the information which was not described with sufficient specificity, I will first permit the government to provide a more detailed public submission before ruling on the issue of *in camera* review. *See Schiller,* 964 F.2d at 1209 (*in camera* review "should be invoked only when issue at hand 'could not be otherwise resolved.' ") (*quoting Center for Auto Safety,* 731 F.2d at 21). Manna's request for *in camera* review is, therefore, denied.

## C. Adequacy of Search

Manna argues that the DEA failed to make an adequate showing that it made a thorough search of its records pursuant to his FOIA request.

■ "[A]n agency responding to a FOIA request must 'conduct[ ] a search reasonably calculated to uncover all relevant documents.' " *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990) (*quoting Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). " 'The issue is *not* whether any further documents might conceivably exist but whether the government's search for responsive documents was adequate.' " *Id.; see also Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986) ("a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request").

---

13. In light of this determination, Manna's argument that the defendants failed to segregate those portions of documents that are not exempt is rendered moot.

14. In such a case, the agency must nonetheless submit a " 'public affidavit explaining in as much detail as possible' the basis for the claimed exemption." *Lame,* 654 F.2d at 921 (*quoting Phillippi v. C.I.A.,* 546 F.2d 1009, 1013 (D.C.Cir. 1976)).

■ An agency may demonstrate the adequacy of its search by means of "reasonably detailed, nonconclusory affidavits submitted in good faith." *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 ((D.C.Cir.1984); *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982). "The affidavits of the responding agency need not set forth with meticulous documentation the details of an epic search for the requested records." *Manna*, 815 F.Supp. at 817. "Rather, in the absence of countervailing evidence or apparent inconsistency in proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by FOIA." *Perry*, 684 F.2d at 126. Moreover, district courts have sanctioned the use of general indices maintained on computer systems or even index cards to locate responsive documents as a reasonable search technique. *See, e.g., Manna*, 815 F.Supp. at 817–18; *Friedman v. F.B.I.*, 605 F.Supp. 306, 310–11 (N.D.Ga.1981).

■ I find that the Bordley Declaration adequately sets forth the scope and methodology of the DEA's search. According to the Declaration, the DEA's "Investigative Reporting and Filing System" contains the administrative, general and investigative files compiled for law enforcement purposes. Upon receipt of a FOIA request, the DEA first performs a search of the computerized indices to the DEA's filing system. This search locates records under the requester's name. As noted above, this search located no documents responsive to Manna's request. The DEA thereafter conducted a search of related, or non-subject, files in which Manna's name was mentioned. Bordley Declaration at ¶ 19. The Bordley Declaration explains the results of the DEA's search. I find based on the Bordley Affidavit, that the DEA's search was reasonable and ade-

quate.[15] Manna's request for a more detailed *Vaughn* index is, therefore, denied.

### D. Exemptions

The defendants argue that the documents withheld from Manna were properly withheld under the second and seventh exemptions under FOIA. Summary judgment is warranted where the agency can demonstrate that the documents withheld fall within one of the nine statutory exemptions. *See National Cable Television Ass'n v. F.C.C.*, 479 F.2d 183, 188 (D.C.Cir.1973). I will consider each of the claimed exemptions in turn.

### 1. Exemption 7

Exemption 7 generally exempts from disclosure "records or information compiled for law enforcement purposes" to the extent that the government demonstrates that the disclosure would fall within one of six delineated categories. 5 U.S.C. § 552(b)(7). In order for a document to qualify as exempt under Exemption 7, therefore, the court must first make a threshold determination whether the records were "compiled for law enforcement purposes." To meet this threshold, an agency must demonstrate a nexus between the records and the enforcement of federal or state law. *See Lewis v. I.R.S.*, 823 F.2d 375, 379 (9th Cir.1987). However, courts have accorded deferential treatment to an agency's claim that records were compiled for a "law enforcement purpose" where the agency's principal function is criminal law enforcement. *Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C.Cir.1984).

The DEA, as the federal agency charged with the primary responsibility for enforcing federal drug laws, clearly has the requisite criminal law enforcement mandate. The Bordley Declaration indicates that the records requested by Manna were compiled by the DEA during the course of various criminal investigations. Indeed, Manna does not dispute that these records satisfy the thresh-

---

**15.** Manna also argues that the DEA failed to search its field offices for records in response to his request. However, as the Bordley Declaration indicates, the DEA's filing system is located in Washington, D.C. Any documents pertaining to plaintiff's request directed at the New York field office were therefore encompassed by his original request to the DEA. According to the Declaration, any information on electronic surveillance on Manna's New York residence would have been found in the search conducted at the Washington D.C. headquarters. Declaration at ¶ 20. I find that the DEA's search was adequate and that Manna's argument is without merit.

old requirement of Exemption 7. I therefore find that the withheld records clearly constitute "records or information compiled for law enforcement purposes."

■ The DEA asserts that various withheld material is exempt pursuant to subsections (C), (D) and (F) of Exemption 7. I will consider these in turn.

a. Exemption 7(D)

Exemption 7(D) exempts

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).[16] "[T]he purpose of Exemption 7(D) is to protect the ability of law enforcement agencies to obtain the cooperation of persons with relevant information." *Landano v. United States Dep't of Justice*, 956 F.2d 422, 432 (3d Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Under Exemption 7(D), the agency may withhold not only the identity of a "confidential" source, but also any information obtained from the source, regardless of the content of the information. *Id.*

■ The critical inquiry under Exemption 7(D) is "not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *United States Dep't of Justice v. Landano,* —— U.S. ——, ——, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993). A source is confidential if it "provided information under an express assurance of confiden-

tiality or in circumstances from which such an assurance could be reasonably inferred." *Id. (quoting* S.Rep. No. 93–1200, at 13 (1974) U.S.Code Cong. & Admin.News pp. 6267, 6291).

■ The DEA does not argue that any of the sources at issue in this case were provided with express assurances of confidentiality. Rather, it argues that circumstances exist from which such an assurance can be reasonably inferred.

In *Landano*, the Supreme Court considered the evidentiary showing that the government must make in order to establish that a source provided information based on an implied assurance of confidentiality. The Supreme Court rejected the argument that there is a presumption that *all* sources supplying information to law enforcement in the course of a criminal investigation are confidential. However, the Court held that more narrowly defined circumstances can provide a basis for inferring an implied assurance of confidentiality. 113 S.Ct. at 2023. For example, the Court observed that nondisclosure could be justified by examining the nature of the crime, or the source's relation to the crime. The Court held that when such "generic" circumstances support an inference of confidentiality, the government may claim Exemption 7(D), "without detailing the circumstances surrounding a particular interview." *Id.* —— U.S. at —— ——, 113 S.Ct. at 2022–23. *See, e.g., Parton v. United States Dep't of Justice,* 727 F.2d 774, 776–77 (8th Cir.1984) (confidentiality implicit where prison officials provided information about alleged attack on inmate because future investigations could be hindered and because of high probability of retaliation).

Here, the government has provided a particularized showing of circumstances from which confidentiality can reasonably be inferred. According to the Bordley Declaration, the documents at issue were retrieved from files in which the plaintiff's name was mentioned in association with other suspected or known organized crime figures. Pages one and two of the *Vaughn* itemization con-

---

**16.** As noted above, there is no dispute that the withheld records were "compiled by a criminal

law enforcement authority in the course of a criminal investigation."

tain information. supplied by local police sources describing the nature and targets of their organized crime investigations. Pages three and four contain information supplied by a police detective concerning investigations of potentially illegal business activities. Pages 22 through 28 represent a report of police intelligence information gathered from various local law enforcement agencies in North Carolina.

I find that these circumstances, viewed together, provide a sufficient basis for inferring an implied assurance of confidentiality. Put simply, where there has been disclosure of intelligence information regarding organized crime activity from local or state law enforcement personnel to federal agents, I find that confidentiality can reasonably be inferred.[17]

b. Exemption 7(C)

5 U.S.C. § 552(b)(7)(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy."

■ In *Landano*, 956 F.2d 422, the Third Circuit set forth the standards for determining whether information is exempt under Exemption 7(C):

An agency's invocation of Exemption 7(C) requires [the court] to identify the privacy interests that would be affected by release of the requested information as well as the public interests that would be served by disclosure. After identifying the competing interests [the court] [is] then called upon to balance those interests to determine if disclosure is appropriate, i.e., whether disclosure "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." § 552(b)(7)(C).

*Id.* at 425–26 (*citing United States Dep't of Justice v. Reporters Committee for Freedom*

of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).[18]

i. Privacy Interest

■ The *Landano* court addressed the issue of whether the identities of individuals who were involved in an FBI investigation or in events with which the investigation was concerned are exempt under Exemption 7(C). The Court held that individuals associated with a criminal investigation, including suspects, witnesses, interviewees and investigators, possess a privacy interest cognizable under Exemption 7(C) in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation. *Id.* at 426. For example, the individual that is the target of an investigation obviously has a privacy interest in not having his or her identity revealed. *Id.* at 426; *see also SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C.Cir.1991) ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.") (*quoting Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 588 (D.C.Cir.1987)). Similarly, disclosure of the names of interviewees and witnesses may result in embarrassment and humiliation. *Landano*, 956 F.2d at 426; *see also Halloran v. Veterans Administration*, 874 F.2d 315, 321 (5th Cir.1989) ("merely being associated with a criminal investigation may lead to ... embarrassment and difficulties"). Finally, the Third Circuit observed that "law enforcement personnel involved in a criminal investigation have a privacy interest, cognizable under Exemption 7(C), in not having their identities disclosed." *Id.* at 426.

In this case, pursuant to Exemption 7(C), the DEA withheld the names of persons who were implicated, involved or associated with an individual who was investigated by the DEA. In some instances, the DEA withheld

**17.** Manna's arguments regarding Exemption 7(D) are based on the Third Circuit *Landano* decision, which, as noted above, was vacated by the Supreme Court on this point. The Supreme Court specifically rejected the Third Circuit's test which required a particularized showing as to

each interview or source. *See Landano*, 956 F.2d at 435.

**18.** This portion of the Third Circuit's *Landano* decision was not disturbed on appeal.

the titles of criminal case files which would identify targets suspected of illegal drug activity. Under the principles enunciated in *Landano,* these individuals all have a privacy interest in not having their identities revealed.

■ The DEA also withheld what it characterized as "personal information" about these individuals. I find, however, that this characterization of the withheld information lacks the requisite specificity in order to grant summary judgment. The DEA failed to explain what types of personal information were withheld and failed to demonstrate how the release of the particular types of information would constitute an unwarranted invasion of privacy. In certain instances, the DEA has claimed that virtually entire documents are exempt under Exemption 7(C) on the basis that they contain the names of individuals and "personal information." [19] However, "the weight of the privacy interest in any particular case will depend upon the type of information at issue and the potential uses and misuses of that information." *National Security Archive v. F.B.I.,* 759 F.Supp. 872, 883 (D.D.C.1991). Without knowing what type of information is involved, I am unable to assess the privacy interest at stake.

Not all disclosure of "personal information" constitutes an unwarranted invasion of privacy. For example, in *Reporters,* the Supreme Court discussed its prior decision in *Rose,* which involved case summaries of disciplinary hearings involving cadet personnel under Exemption 6. The Court noted the privacy interest implicated by disclosure of the names of the subjects of the case summaries, as well as "other identifying information." *Id.* 489 U.S. at 769, 109 S.Ct. at 1480. However, disclosure of the case summaries themselves, with the identifying material deleted, was "an appropriate subject of a FOIA request." *Id.* at 773, 109 S.Ct. at 1482. Here, there has been no demonstration or even representation that any of "personal information" withheld from Manna constituted "identifying information." *See Jaffe v. C.I.A.,* 516 F.Supp. 576, 586 (D.D.C.1981) (withholding of "paragraph that contains nei-

ther the name or any identifying information that might invade the privacy of a third party" impermissible). Nor does the DEA argue that the deletion of the names and other identifying information is inadequate to prevent an unwarranted invasion of privacy. *See Alirez v. N.L.R.B.,* 676 F.2d 423, 427 (10th Cir.1982). Thus, I must deny the government's motion for summary judgment, without prejudice, as to information characterized in the government's *Vaughn* itemization as "personal information." The government may submit a supplemental itemization which explains with further particularity the type of information withheld and why release of that particular information would constitute an unwarranted invasion of privacy.

I will now consider the remaining prongs of the Exemption 7(C) analysis with regard to the names of individuals withheld by the DEA.

### ii. Public Interest

■ In *Reporters Committee,* 489 U.S. 749, 109 S.Ct. 1468, the Supreme Court provided guidance in identifying relevant public interests that may be weighed against private interests under Exemption 7(C). "Neither the 'purposes for which the request is made' nor the 'identity of the requester' can determine whether the public has an interest in disclosure." *Landano,* 956 F.2d at 428 (quoting *Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1480–81.) Rather, the public interest inquiry turns on "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act 'to open up agency action to the light of public scrutiny.' " *Reporters Committee,* 489 U.S. at 772, 109 S.Ct. at 1481 (quoting *Rose,* 425 U.S. at 372, 96 S.Ct. at 1604). Thus, "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Id.* 489 U.S. at 773, 109 S.Ct. at 1482.

---

**19.** The DEA also claimed certain "internal markings" as exempt under Exemption 2.

■ Applying these principles to the matter at hand, I find that disclosure of the names of individuals associated with criminal investigations clearly would not shed any light on how the DEA conducts its business. I therefore conclude that there is no public interest in disclosure of their identities.

Manna argues, however, that there is a public interest in criminal trials and the administration of criminal justice. He contends that the government engaged in illegal electronic surveillance of his residence and has engaged in a "cover-up." He argues that it is in the public interest that the alleged wrong-doing on the part of the government be exposed.

As an initial matter, I note that the documents withheld from Manna, as demonstrated by the Bordley Declaration, have no relationship whatsoever to Manna's asserted public interest. First, as noted above, Manna was never the subject of a DEA investigation. Therefore, the DEA was not in possession of any documents directly relating to the government's investigation of Manna's alleged criminal activities. The Bordley Declaration specifically states that the documents responsive to Manna's request contain no information concerning electronic surveillance. *See* Bordley Declaration at ¶ 20. Second, the information at issue here consists merely of the names of individuals associated with other criminal investigations. The mere identities of these individuals obviously have no relationship to the government's alleged illegal cover-up in Manna's case. Thus, disclosure of the names withheld under Exemption 7(C) would not further the public interest asserted by Manna.

■ Moreover, speculative assertions of public interest are inadequate to overcome legitimate concrete private interests. *Department of State v. Ray*, —— U.S. ——,

——, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991) ("Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy."). Rather, "evidence of official misconduct [is necessary] to identify a genuine public interest in disclosure." *Id.* —— U.S. at ——, 112 S.Ct. at 550. In this regard, Judge Dickinson Debevoise, in a separate FOIA action brought by Manna to obtain documents with respect to his conviction from the DOJ, held that Manna's interest in having his "illegal conviction" overturned was not a legitimate public interest warranting disclosure under Exemption 7(C). *See Manna*, 815 F.Supp. at 809.

■ Finally, the fact that Manna desires to obtain documents in order to overturn his conviction does not give rise to a public interest. *See Hale v. United States Dep't of Justice*, 973 F.2d 894, 901 (10th Cir.1992), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993). As the Supreme Court has dictated, neither "the purposes for which the request for information is made" nor "the identity of the requesting party" inform the public interest inquiry. *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. at 1468.[20]

#### iii. Balancing

Because the individuals referenced in the documents requested by Manna have a privacy interest in not having their identities disclosed and because any public interest in having this information disclosed is, at best, minimal, I find that the public interest does not outweigh the private interests involved, and that, accordingly, disclosure of the names could reasonably be expected to constitute an unwarranted invasion of personal privacy. I therefore find that the DEA properly withheld this information under Exemption 7(C).[21]

---

20. Manna argues that he has never been involved in any type of drug-related activity and that any records in the possession of the DEA must therefore contain exculpatory information and should be released immediately. Setting aside the illogic of Manna's reasoning, FOIA does not create "affirmative grounds for disclosure" that somehow override the statutory exemptions from disclosure. *See Burge v. Eastburn*, 934 F.2d 577, 580 (5th Cir.1991). If an exemption applies, the

agency may withhold the requested information, even if the information is "exculpatory."

21. The DEA also invokes Exemption 7(F) as a basis for withholding the names of law enforcement personnel. Exemption 7(F) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to

**880**

### 2. Exemption 2

■ Exemption 2 exempts from disclosure matters that are "related to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "This exemption applies to 'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest." *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980) (footnote omitted); *see also Founding Church of Scientology of Washington, D.C. v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983) (material exempt if it "relates to trivial administrative matters of no genuine public interest"). The information must, however, relate to an agency "rule" or "practice." *Schwaner v. Department of Air Force,* 898 F.2d 793, 794 (D.C.Cir.1990). Purely "internal matters" which do not relate to a rule or practice do not fall within the exemption. *Id.*

■ Courts have interpreted Exemption 2 to allow the withholding of law enforcement identification codes. *See Silets v. United States Dep't of Justice,* 945 F.2d 227, 230 (7th Cir.1991) ("symbol numbers used internally by the FBI to identify confidential sources" exempt under Exemption (b)(2)), *cert. denied,* ── U.S. ──, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992); *Lesar,* 636 F.2d at 485 (symbols used to refer to informants in FBI records exempt under (b)(2)); *Scherer v. Kelley,* 584 F.2d 170, 175–76 (7th Cir.1978) ("administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references" exempt under Section (b)(2)), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979).

As noted above, pursuant to Exemption 2, the DEA redacted all "G–DEP" codes and "NADDIS" numbers, which are internal codes used by the DEA to facilitate administrative and record-keeping procedures. I find that these codes are matters related to internal agency practice "in which the public has no substantial interest," and which "bear no relation to the substantive content of the records" sought by Manna. *Lesar,* 636 F.2d

at 485–86. I therefore find that the codes were properly withheld by the DEA under Exemption 2. Indeed, Manna concedes that G–DEP codes and NADDIS numbers may be withheld under Exemption 2.

■ In addition to redacting G–DEP codes and NADDIS Numbers, however, the DEA's *Vaughn* itemization also refers to redactions of "internal markings." Manna argues that the agency did not adequately justify withholding these "internal markings." I agree. The DEA failed to describe or explain what these "internal markings" are. Thus, this court cannot discern whether these "internal markings," in fact, relate to internal rules or practice and whether these markings constitute trivial administrative matters of no public interest. Therefore, the government's motion is denied as to the withheld information described as "internal markings." The government may submit a supplemental itemization which explains with further particularity the type of information withheld and why release of that particular information would constitute an unwarranted invasion of privacy.

### Conclusion

For the foregoing reasons, Manna's motion to reopen the case is granted, defendants' motion for summary judgment is granted except as to the information designated in the *Vaughn* itemization as "personal information" and "internal markings," Manna's cross-motion for partial summary judgment is denied, and Manna's motion to strike defendants' declaration is denied.

---

endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). However, because I find that the DEA properly withheld the identities of law enforcement officials pursuant to Exemption 7(C), I need not consider Exemption 7(F).