**Lawrence S. BERGER and Realty Research Corporation, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE and Department of the Treasury, Defendants.**

Civil Action No. 05–3854(HAA).

United States District Court, D. New Jersey.

May 22, 2007.

488

Frank Agostino, Esq., James J. Bonicos, Esq., Calo Agostino, P.C., Hackensack, NJ, for Plaintiffs.

Christopher J. Christie, Esq., United States Attorney, Gerald A. Role, Esq., Trial Attorney, Tax Division, United States Department of Justice, Washington, DC, for Defendants.

## OPINION AND ORDER

ACKERMAN, Senior District Judge.

This matter comes before the Court on the motion for summary judgment (Docket No. 10) filed by Defendants Internal Revenue Service and the Department of the Treasury (collectively "IRS" or "Defendants"). Plaintiffs Lawrence S. Berger and Realty Research Corporation ("RRC") brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to compel disclosure of certain documents from the IRS relating to the civil and criminal tax investigation of which Plaintiffs were the subjects. For the following reasons, Defendants' motion for summary judgment will be granted.

### Background

Plaintiffs were the subject of a civil Trust Fund Recovery Penalty ("TFRP") investigation and related criminal investigation ("CI") by the IRS.[1] Berger resides in Morristown, New Jersey, and RRC is a New Jersey corporation with its principal place of business at Berger's address in Morristown. Revenue Officer Mary M. Williams handled the civil TFRP inquiry in the IRS's small business/self-employed field office in Parsippany, New Jersey, and

---

1. "The Internal Revenue Code ... requires employers to withhold from their employees' paychecks funds representing the employees' personal income and Social Security taxes. Because employers must hold these funds in 'trust' for the United States, the taxes are commonly referred to as 'trust fund' taxes. Should employers fail to turn over the trust fund taxes, the IRS may collect a Trust Fund Recovery Penalty, equal to the sum of the unpaid taxes, directly from the officers or other persons within the company who are responsible for collecting the taxes." *Ruggiero v. United States*, 242 F.R.D. 437, 438, 2007 WL 1119200, at *1 (N.D.Ill.2007) (citations omitted).

Special Agent Eric Rennert handled the CI in the IRS's criminal investigation field office in Springfield, New Jersey. No charges were ever brought against Plaintiffs as a result of these investigations.

## I. Plaintiffs' Initial FOIA Request

On December 8, 2003, Plaintiffs' counsel submitted a FOIA and Privacy Act request to the IRS requesting the release to counsel of documents relating to the investigations of Plaintiffs. The FOIA request included demands for the entire civil and criminal investigatory files maintained by Williams and Rennert; all IRS forms and other documents relevant to the TFRP inquiry and unpaid taxes by Plaintiffs; a list of third parties contacted by the IRS during the civil and criminal investigations; and time records kept by Williams relating to the civil investigation. Along with the request, counsel submitted two Power of Attorney forms: one for Berger authorizing disclosure of TFRP-related documents for tax years 1998–2003, and another for RRC authorizing disclosure of employment tax-related matters for tax years 1998–2003.

Plaintiffs' FOIA request was referred to Senior Disclosure Specialist Joseph A. Reidy in the IRS's Disclosure Office in Springfield, New Jersey. After determining that all responsive documents would be found in the field office files of Williams and Rennert, Reidy obtained and reviewed these files. In a letter to Plaintiffs' counsel dated July 23, 2004, the Disclosure Office responded to Plaintiffs' request. The entire CI file was withheld because the information in the CI file was beyond the scope of the Power of Attorney forms submitted by counsel. The IRS concluded that certain documents in the civil TFRP file were exempt from disclosure, in whole or in part, under various FOIA exemptions.[2] Of the 459 pages of the TFRP file found responsive to Plaintiffs' request, the Disclosure Office withheld 19 pages in whole or in part pursuant to FOIA exemptions. The IRS also withheld 70 pages in full and 64 pages in part where the information pertained to tax years or matters outside the scope of the Power of Attorney forms.

## II. Plaintiffs' Administrative Appeal

By letter dated August 27, 2004, Plaintiffs' counsel filed an administrative appeal of the Disclosure Office's decision with the IRS Appeals Office in Riverside, California. Counsel challenged the IRS's failure to provide a detailed description of the information withheld and the reason for withholding. Such a document is commonly called a *Vaughn* index: "an index correlating each withheld document, or a portion thereof, with a specific exemption and relevant part of an agency's justification for nondisclosure." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1047 n. 1 (3d Cir. 1995) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973)). Counsel also complained that the IRS failed to conduct a reasonable search because it produced no documents from the IRS's Service Center or from a Federal Records Center. Along with the appeal, counsel submitted an additional Power of Attorney form with regard to Berger, broadening the scope of the power of attorney granted to counsel to include tax and TFRP information for the tax years 1996 to 2004.

 Appeals Officer Heidi Peterson handled the appeal. Peterson determined that all responsive documents were located

---

**2.** The FOIA exemptions are codified at 5 U.S.C. § 552(b). In this Opinion, the Court will generally refer to FOIA exemptions as "Exemption # ." For example, the FOIA exemption codified at 5 U.S.C. § 552(b)(7)(C) will be referred to as "Exemption 7(C)."

in the files maintained by Williams and Rennert in their respective field offices, and that there were no responsive documents at any Service Center. In a letter dated July 15, 2005, the Appeals Office resolved Plaintiffs' appeal, affirming in part and reversing in part the Disclosure Office's determination. Based upon its review and the new Power of Attorney form, the Appeals Office disclosed an additional 16 pages in full and 8 pages in part from the civil TFRP file. The Appeals Office affirmed the withholding of the remaining undisclosed portions of the TFRP file for the reasons stated by the Disclosure Office. With regard to the CI file, the Appeals Office, based in part on the new Power of Attorney form, reviewed the over 2,300 pages of the CI file and disclosed to counsel 844 pages in full and 151 pages in part. Approximately 1,370 pages were withheld in full or in part pursuant to FOIA exemptions. Some pages were withheld because the information in those pages still fell beyond the scope of the Power of Attorney forms submitted by counsel. The Appeals Office also informed counsel that Plaintiffs were not entitled to a *Vaughn* index on administrative appeal.[3]

### III. Plaintiffs' Complaint and the IRS's Post–Complaint Review

Plaintiffs filed the Complaint in this matter on August 3, 2005, seeking disclo-

sure of the information withheld by the IRS. The Complaint contains five counts, seeking disclosure pursuant to: 1) FOIA; 2) the Privacy Act; 3) Internal Revenue Code ("I.R.C.") § 6103; 4) I.R.C. § 6203; and 5) I.R.C. § 7602(c).[4] Plaintiffs' case was referred for review to Mary Ellen Keys in the IRS's Office of Assistant Chief Counsel for Disclosure and Privacy Law. Keys reviewed the entire administrative history and the documents withheld by the IRS. Approximately ten months after filing their Complaint, Plaintiffs' counsel submitted two additional Power of Attorney forms again expanding the scope of authorized disclosure. Based on this expanded authority and on her review of this matter, Keys, in August 2006, authorized the disclosure of approximately 900 pages, in whole or in part, from the TFRP and CI files previously withheld by the Appeals Office. Keys also authorized, in October 2006, the disclosure of a list of third parties contacted by the IRS in its investigations. She additionally authorized the disclosure of several IRS forms that were not disclosed by the Appeals Office. All of these documents have been released to Plaintiffs. The IRS asserted FOIA exemptions with regard to the remainder of the responsive documents sought by Plaintiffs, and Keys's Declaration submitted in support of the instant motion provides de-

**3.** "[T]here is no requirement that an agency provide a 'search certificate' or a 'Vaughn' index on an initial request for documents. The requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court." *Schwarz v. U.S. Dep't of Treasury*, 131 F.Supp.2d 142, 147 (D.D.C.2000).

**4.** A requestor may, after exhausting an agency's administrative FOIA process, bring an action in "the district court of the United States in the district in which the [requestor] resides, or has his principal place of business, or in which the agency records are situated,

or in the District of Columbia." 5 U.S.C. § 552(a)(4)(B). The district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* The Privacy Act also authorizes a private right of action for a requestor where the agency refuses to comply with an individual request and, as under FOIA, "the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. §§ 552a(g)(1)(B) and 552a(g)(3)(A).

tailed grounds for the IRS's assertion of various FOIA exemptions. The remaining documents withheld by the IRS included

- 6 pages in full and 2 pages in part of the CI file pursuant to Exemption 3 in conjunction with I.R.C. § 6103(a) where the information concerned third-party return information;

- 64 pages in full and 1 page in part of the CI file pursuant to Exemption 3 in conjunction with 31 U.S.C. § 5319 where the documents consist of Currency Transaction Reports ("CTRs") and other reports compiled by the IRS (or information from such reports) and exempt from disclosure by § 5319;[5]

- 4 pages in full pursuant to Exemption 5 where the documents are subject to a litigation privilege;

- 21 pages in full and 357 pages in part pursuant to Exemption 7(C) where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy; and

- 711 pages in full pursuant to Exemption 6 where the information involves time records of Williams kept during the investigation of Plaintiffs and where disclosure would constitute a clearly unwarranted invasion of personal privacy.

## IV. Defendants' Motion for Summary Judgment and the IRS's "Re-Review"

Defendants filed the instant motion for summary judgment on October 27, 2006. Defendants support their motion with affidavits from Reidy, Rennert, Peterson, Keys, and Department of Justice trial counsel Gerald A. Role. In responding to Defendants' motion, Plaintiffs submitted the *Vaughn* Index prepared by the IRS and provided to Plaintiffs during this litigation. Keys again reviewed Plaintiffs' request and arguments following receipt of their response to Defendants' motion. Shortly before filing its reply papers, the IRS released to Plaintiffs an additional 22 pages of documents previously withheld under Exemption 3 in conjunction with 31 U.S.C. § 5319. These pages were disclosed because they contained information not drawn from CTRs and other statutorily-exempt reports. Keys's Second Declaration, submitted with Defendants' reply papers, contains a detailed response to Plaintiffs' summary judgment brief based on the IRS's "re-review" and reasserted and elaborated upon the IRS's reliance on various FOIA exemptions.

### Analysis

## I. Summary Judgment Standard

On this motion, this Court must assess Defendants' basis for refusing to disclose the remaining withheld information. FOIA cases are routinely resolved on summary judgment. *Manna v. U.S. Dep't of Justice*, 832 F.Supp. 866, 870 (D.N.J.1993) (Ackerman, J.) (*Manna II*), aff'd, 51 F.3d 1158 (3d Cir.1995) (*Manna III*); *see also Lewis v. U.S. Envt'l Protection Agency*, Civil Action No. 06–2660, 2006 WL 3227787, at *2 (E.D.Pa. Nov. 3, 2006) ("Summary judgment is the primary avenue for resolving a FOIA dispute."). Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted

---

5. In her initial Declaration, Keys asserted that 69 pages were withheld in part under Exemption 3 and § 5319. Specifically, Keys stated that Pages 820–31 of the CI file were withheld from Plaintiffs. (Keys Decl. at ¶ 16.) However, after further review, Keys stated in her Second Declaration that five pages in this series, Pages 826–30, were in fact fully disclosed to Plaintiffs. (Second Keys Decl. at ¶ 20.) Therefore, the IRS withheld 64 pages, not 69, from Plaintiffs under this Exemption at the time of the filing of the instant motion.

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. 2505; *see also Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir.1985).

The substantive law will identify which facts are "material." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Indeed, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.*

This does not mean, however, that a district court may ignore the weight of the evidence. *Id.* "[I]f the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor of the moving party." *Peterson v. Am. Tel. & Tel. Co.*, Civ. A. No. 99–4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Therefore, to raise a genuine issue of material fact, the summary judgment opponent " 'need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

 These general summary judgment standards apply with equal force to a FOIA/Privacy Act action. *Pipko v. CIA*, 312 F.Supp.2d 669, 674 (D.N.J.2004). To prevail on a summary judgment motion, the agency's affidavits must "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption" and "are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith." *Davin*, 60 F.3d at 1050 (citations omitted). The Court may award summary judgment "on the basis of agency affidavits alone where the affidavits are sufficiently detailed and in good faith." *Manna II*, 832 F.Supp. at 870; *see also, e.g., Amro v. U.S. Customs Serv.*, 128 F.Supp.2d 776, 782 (E.D.Pa. 2001) ("The affidavits must be detailed, nonconclusory, and in good faith."). The Court must review the IRS's determinations *de novo* and the IRS bears the burden to sustain its withholding of certain documents pursuant to a FOIA exemption. 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(3)(A); *see also, e.g., Manna III*, 51 F.3d at 1163; *Pipko*, 312 F.Supp.2d at 675.

■■■ Summary judgment should be granted "where the agency can demonstrate that the documents withheld fall within one of the nine statutory exemptions." *Manna II*, 832 F.Supp. at 875. "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir.2001). However, FOIA exemptions must be narrowly construed. *Manna II*, 832 F.Supp. at 870. Furthermore, an entire document generally is not exempt merely because a portion of the document is exempt; the agency must release any "reasonably segregable," non-exempt portion of a record. 5 U.S.C. § 552(b); *see also Manna II*, 832 F.Supp. at 870.

## II. The IRS's Search for Responsive Documents Was Adequate

■■■ In their administrative appeal, Plaintiffs contended that the IRS's search for responsive documents was inadequate because the IRS produced no documents from any IRS Service Center or Federal Records Center. The Appeals Office concluded, and the Keys Declaration reasserts, that all responsive documents were located in the respective files of Williams and Rennert in the IRS's civil collection and criminal investigation field offices. Plaintiffs do not appear to raise this issue in their response to Defendants' motion for summary judgment. To the extent that Plaintiffs still challenge the adequacy of the IRS's search, however, this Court concludes that the search was more than adequate. When faced with a FOIA request, an agency must conduct a search "reasonably calculated to uncover all relevant documents," and may demonstrate the adequacy of its search "by means of reasonably detailed, nonconclusory affidavits submitted in good faith." *Manna II*, 832 F.Supp. at 874–75.

In their Declarations, Reidy, Peterson, and Keys describe the IRS's search process. They attest that all relevant documents were in the field office files and that, at the time of the FOIA request, no responsive documents were at an IRS Service Center or Federal Records Center. (Reidy Decl. at ¶¶ 6, 13; Peterson Decl. at ¶ 8; Keys Decl. at ¶ 9.) This Court finds that the Declarations adequately demonstrate the reasonableness of the IRS's search and were made in good faith. Plaintiffs offer no evidence to the contrary regarding the IRS's search or the good faith basis of the agency's representations. *See SafeCard Servs., Inc. v. SEC.*, 926 F.2d 1197, 1200 (D.C.Cir.1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981))).

### III. This Court Will Not Require *In Camera* Review of the Withheld Documents

 FOIA authorizes a court to examine withheld documents *in camera* to determine whether the documents should be disclosed. 5 U.S.C. § 552(a)(4)(B). However, such review is generally disfavored and should be undertaken only when the affidavits or the *Vaughn* index are insufficient. *Manna II*, 832 F.Supp. at 874; *see also Int'l Collision Specialists, Inc. v. IRS*, No. 93–2500, 1994 WL 395310, at *3 (D.N.J. Mar. 4, 1994). "It is neither consistent with the FOIA nor a wise use of judicial resources to rely on *in camera* review of documents as the principal tool for review of segregability disputes." *Pa. Dep't of Pub. Welfare v. United States*, Civil Action No. 05–1285, 2006 WL 3792628, at *16 (W.D.Pa. Dec. 21, 2006) (adopting Magistrate Judge's Report and Recommendation) (citing *Vaughn*, 484 F.2d at 825–26). Where the "affidavits demonstrate with reasonable specificity why the documents are exempt" and there is no evidence of bad faith, the court in its discretion may choose not to require *in camera* review. *Manna II*, 832 F.Supp. at 874; *see also Int'l Collision*, 1994 WL 395310, at *3.

This Court is satisfied with the detail and specificity of the IRS's affidavits and the *Vaughn* Index, and will resolve this motion without resort to *in camera* review. *See Rugiero*, 257 F.3d at 544 ("Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence."). Plaintiffs have presented no evidence of bad faith on the IRS's part and have not overcome the presumption of good faith given to Defendants' affidavits. *See id.* ("Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith." (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991))). If anything, the IRS's repeated "re-reviews" and disclosure of additional information at each stage of Plaintiffs' request, both at the administrative level and during the pendency of this litigation, suggests that the IRS has acted reasonably and in good faith in responding to Plaintiffs' request. As discussed in greater detail below, the IRS's affidavits are sufficiently detailed regarding the nature of the withheld documents and the asserted basis for withholding that *in camera* review is unnecessary.

### IV. The IRS Properly Withheld Documents Pursuant to FOIA Exemption 3

Under FOIA Exemption 3, an agency can withhold documents where they are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). A statute qualifies under this exemption if it "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* Defendants assert Exemption 3 with respect to two statutes.

#### A. I.R.C. § 6103

 Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103, has long been held to be a qualifying statute under Exemption 3. *See Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 11, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987); *see also Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.Cir. 1997); *Grasso v. IRS*, 785 F.2d 70, 73–75 (3d Cir.1986); *Carp v. IRS*, Civil Action No. 00–5992, 2002 WL 373448, at *3 (D.N.J. Jan. 28, 2002); *Small v. IRS*, 820 F.Supp. 163, 166 (D.N.J.1992). This stat-

ute, subject to certain exceptions not applicable here, prohibits the disclosure of third-party tax return information without the authorization of the third party. Section 6103 provides that "Returns and return information shall be confidential, and except as authorized by this title ... no officer or employee of the United States ... shall disclose any return or return information." I.R.C. § 6103(a). The statute defines "return information" broadly as

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....

I.R.C. § 6103(b)(2)(A).

The IRS is withholding pages 362–63 in part and pages 2099–2104 in full from Berger's CI file. According to Keys's Declaration and the *Vaughn* Index, these pages comprise "Individual Return Program Transcript Information pertaining to third-party taxpayer." (Keys Decl. at ¶ 13.) Plaintiffs concede that the documents in question are covered by § 6103 but contend that the IRS should segregate and withhold only information which could be associated with a third-party taxpayer, such as name, Social Security number, and address, and should disclose all non-identifying information from these pages. However, the Supreme Court of the United States has held that § 6103 does not allow such redacting, because "Congress did not intend the statute to allow the disclosure of otherwise confidential return information merely by the redaction of identifying details." *Church of Scientology,* 484 U.S. at 16, 108 S.Ct. 271; *see also id.* at 18, 108 S.Ct. 271 ("[A]s with a return itself, removal of identification from return information would not deprive it of protection under § 6103(b)."). Thus, Plaintiffs' argument for segregation of the third-party tax information lacks merit.

In any event, the IRS appears to have segregated third-party return information where permissible and appropriate. Keys states with respect to pages 362–63 that "the *only* information withheld from disclosure are the names and social security numbers of third-party taxpayers." (Second Keys Decl. at ¶ 8 (emphasis in original).) Pages 362–63, described as "Individual Master File transcript information," appear to contain tax information which the IRS was able to segregate in accordance with the strictures of § 6103. (*Vaughn* Index at 23.)[6] On the other hand, pages 2099–2104 comprise a complete third-party tax return replete with identifying information and the kinds of information—income, payments, etc.—defined as "tax information" and barred from disclosure by § 6103. (Second Keys Decl. at ¶ 9.) The IRS properly withheld 2 pages in full and 6 pages in part pursuant to Exemption 3 and § 6103.

**6.** Plaintiffs have submitted the *Vaughn* Index as Exhibits A through E to the Declaration of Frank Agostino. Plaintiffs helpfully divided the *Vaughn* Index into five sections corresponding to each of the five grounds for exemption asserted by the IRS. In this Opinion and Order, this Court will cite to pages of the *Vaughn* Index directly, rather than to the pages' specific location in the exhibits to the Agostino Declaration.

## B. *31 U.S.C. § 5319*

 The IRS initially withheld 1 page in full and 64 pages in part of the CI file pursuant to 31 U.S.C. § 5319 and Exemption 3. These pages—Pages 515–17, 547, 568–72, 578–79, 584–600, 820–25, 831, 1634–35, 1643, and 2038–64—contain information regarding certain cash transactions made by Plaintiffs, including Currency and Banking Retrieval System ("CBRS") summary information and CBRS CTRs. Section 5319 provides that CTRs and other "report[s] and record[s] of reports" of transactions prepared pursuant to the Bank Secrecy Act (Title 31, Chapter 53, Subchapter II) "are exempt from disclosure under section 552 of title 5." 31 U.S.C. § 5319. Thus, Congress explicitly precluded disclosure of CTRs and similar reports ("Bank Secrecy Act reports") under § 5319 and expressly stated that covered reports would be exempt from disclosure under FOIA. Plaintiffs agree that § 5319 meets the criteria of Exemption 3 because it mandates withholding in such a manner as to leave no discretion on the issue to the agency. The few courts to address the issue have reached the natural conclusion that § 5319 qualifies as an exempting statute under Exemption 3. *See Small,* 820 F.Supp. at 166 (describing reports exempt from FOIA disclosure pursuant to § 5319 as "financial institution reports and records of reports of transactions involving the payment, receipt or transfer of United States coins and currency"); *see also Sciba v. Bd. of Governors of Fed. Reserve Sys.,* Civil Action No. 04–1011, 2005 WL 3201206, at *3 (D.D.C. Nov.4, 2005); *Linn v. U.S. Dep't of Justice,* Civil Action No. 92–1406, 1995 WL 631847, at *30 (D.D.C. Aug. 22, 1995).

After considering Plaintiffs' response to Defendants' summary judgment motion and re-reviewing the withheld material, the IRS disclosed all or part of 22 pages which were initially withheld pursuant to § 5319. The IRS determined that information in those 22 pages not derived or extracted directly from Bank Secrecy Act reports could be segregated from exempt information, and the IRS therefore disclosed portions of CI file pages 516–17, 547, 568–72, 578–79,820–25, 831, 1634–35, 1643, and 2038–39. Defendants therefore have conceded Plaintiffs' argument that certain information not extracted from Bank Secrecy Act reports should be disclosed, and have in fact disclosed such information. The remaining information withheld pursuant to § 5319, the IRS asserts, constitutes Bank Secrecy Act forms or information derived or extracted from Bank Secrecy Act reports. (Second Keys Decl. at ¶¶ 14–22.) Based on its review of the Second Keys Declaration and the *Vaughn* Index, the Court accepts the IRS's representation.

This Court rejects Plaintiffs' other arguments for disclosure of information covered by § 5319. Plaintiffs contend that Exemption 3 does not cover CBRS information because, "in other contexts," the IRS has some discretion, based on the Internal Revenue Manual, to release CBRS information. (Pls.' Br. at 9.) This Court finds that CBRS reports qualify as reports under the Bank Secrecy Act that are exempt from disclosure under FOIA. Section 5319 provides that Bank Secrecy Act reports and records of reports are "exempt from disclosure under section 552 of title 5." 31 U.S.C. § 5319. This explicit statement of congressional intent to exempt reports such as CBRS reports outweighs the strained reading Plaintiffs offer based on the thin reed of an asserted section of the Internal Revenue Manual.[7]

---

**7.** Plaintiffs cite an Internal Revenue Manual ("I.R.M.") provision which states, according

"The absolute language of section 5319 eliminates any possibility of agency discretion." *Linn,* 1995 WL 631847, at *30; *see also Sciba,* 2005 WL 3201206, at *6 ("A fair reading of section 5319 leads to the conclusion that it explicitly exempts financial institution reports from public disclosure under the FOIA."). Furthermore, a court in this District has held that CBRS information is covered by § 5319 and exempt from disclosure under FOIA Exemption 3. *See Small,* 820 F.Supp. at 166 (discussing "information from the ... Currency and Banking Retrieval System" and holding that because § 5319 "explicitly restricts the release of this information, the IRS must withhold this information from [plaintiff] under FOIA"). This Court similarly concludes that the IRS properly withheld documents pursuant to Exemption 3 and § 5319.

### C. Privacy Act

 Plaintiffs also argue that even if the IRS properly withheld information pursuant to FOIA and § 5319, the Privacy Act nonetheless allows disclosure where the information concerns transactions by Plaintiff Berger himself. The Privacy Act provides that "[e]ach agency that maintains a system of records shall ... (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d). Plaintiffs stress that the Privacy Act applies even if FOIA exempts disclosure, as the Privacy Act specifically states that "[n]o agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section." 5 U.S.C. § 552a(t).

However, Plaintiffs ignore the exceptions to the Privacy Act. Section 552a(j)(2) authorizes an agency to promulgate rules

---

to Plaintiffs, that with regard to the contents of a CBRS report, "the examiner may disclose to the examined entity that a currency report was or was not filed and the contents of the report if any." (Pls.' Br. at 9 (quoting Internal Revenue Manual § 4.26.4.9 (Jan. 1, 2003)).) Plaintiffs argue that under this asserted I.R.M. section, the IRS has some discretion to disclose CBRS information. Therefore, according to Plaintiffs, such information cannot be exempt under Exemption 3 because that exemption only covers statutes which provide that "matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A).

Defendants do not address Plaintiffs' Internal Revenue Manual argument. After its own search, the Court could not find the language quoted by Plaintiffs in the current version of I.R.M. § 4.26.4.9, effective November 17, 2006, or indeed anywhere else in the current version of the Internal Revenue Manual. Of course, the applicable Internal Revenue Manual would be the January 1, 2003 version in effect when Plaintiffs made their initial request. Even if the provision Plaintiffs quote was in effect at that time, this Court finds, for the reasons stated in this Opinion and Order, that CBRS reports qualify as reports exempt from disclosure under FOIA and § 5319.

Furthermore, while the current version of the Internal Revenue Manual is not directly applicable here, this Court's independent review of the current Internal Revenue Manual bolsters the Court's view that § 5319 covers this information. The current Internal Revenue Manual provides that "Examiners must not disclose CBRS information to the public." I.R.M. § 4.26.4.10 (Nov. 17, 2006). Another current Internal Revenue Manual provision states that "Form 8300 reports filed after December 31, 2001 and accessed through the Currency and Banking Retrieval System (CBRS) are Title 31 information subject to Bank Secrecy Act disclosure standards and are not subject to release under FOIA." I.R.M. § 11.3.13.7.6(4) (Jan. 1, 2006). Much of the information withheld by the IRS are Form 8300s or information derived from Form 8300s.

to exempt any system of records from disclosure under § 552a(d) if the system of records is maintained by an agency which "performs as its principal function any activity pertaining to the enforcement of criminal laws" and "which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders ... (B) information compiled for the purpose of a criminal investigation ... or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws." 5 U.S.C. § 552a(j)(2). Section 552a(k)(2) similarly authorizes an agency to promulgate rules to exempt any system of records from disclosure under § 552a(d) if the system of records includes "investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section." 5 U.S.C. § 552a(k)(2).

Pursuant to these explicit statutory exceptions to Privacy Act disclosure, the IRS has issued a rule exempting its system of records encompassing CTRs and other Bank Secrecy Act reports from disclosure under subsection (d) of the Privacy Act. Internal Revenue Service, Privacy Act of 1974, System of Records Notice, Treasury/IRS 46.050, 66 Fed.Reg. 63784, 63847 (Dec. 10, 2001). Thus, the IRS has elected, in its statutorily-granted rulemaking authority, to exempt from the Privacy Act the same records exempted from FOIA under Exemption 3 and § 5319. (Keys Decl. at ¶¶ 12–13.) The IRS properly withheld Bank Secrecy Act report information under both FOIA and the Privacy Act.

## V. The IRS Properly Withheld Documents Pursuant to FOIA Exemption 5

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The IRS has invoked this exemption to withhold two copies (4 pages total) of an interagency letter from the United States Attorney for the District of New Jersey to the Special Agent in Charge, Criminal Investigations, Internal Revenue Service, regarding the grand jury investigation of Plaintiff Berger. (Keys Decl. at ¶ 21; Second Keys Decl. at ¶ 24.) The IRS claims that this information is protected by the governmental deliberative privilege and the attorney work product doctrine.

### A. Governmental Deliberative Privilege

 The Third Circuit and many other federal courts have recognized that Exemption 5 encompasses the governmental deliberative process privilege. *See, e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Cuccaro v. Sec'y of Labor,* 770 F.2d 355, 357 (3d Cir.1985); *Conoco, Inc. v. U.S. Dep't of Justice,* 687 F.2d 724, 727 (3d Cir.1982); *see also Pa. Dep't of Pub. Welfare,* 2006 WL 3792628, at \*24; *Manna v. Dep't of Justice,* 815 F.Supp. 798, 814 (D.N.J.1993) (Debevoise, J.) (*Manna I* ), *aff'd, Manna III.* This privilege serves to "encourage candid communications between subordinates and superiors" and "prevent the quality of agency decisionmaking from deteriorating as a result of public exposure." *Manna I,* 815 F.Supp. at 814. To come within the deliberative process privilege, a government document must be both "predecisional and deliberative." *Id.* at 815 (citation omitted). "A document is 'predecisional' when it is received by the decision maker on the subject of the decision prior to the time the decision is made," and "a document is 'deliberative' when it reflects the give-and-take of the consultative pro-

cess.'" *Id.* (citation omitted). This "executive privilege" has been held to protect "advisory opinions and recommendations of government." *Cuccaro*, 770 F.2d at 357. "[M]aterials properly withheld from disclosure pursuant to Exemption 5 do not lose their exempt status *unless* the agency expressly incorporates the material in its final decision." *Id.* at 358 (emphasis in original).

According to the Keys Declaration, the letter withheld by the IRS based on Exemption 5 and the governmental deliberative process privilege "selectively present[s]" the factual basis for pursuing a grand jury investigation of Plaintiff Berger and "provides analysis and recommendations for use by the [Internal Revenue] Service and the DOJ [Department of Justice] in deciding whether to pursue prosecution." (Keys Decl. at ¶ 22.) Thus, the IRS asserts that the letter was both deliberative and predecisional, as it informed the Department of Justice's ultimate decision not to prosecute Plaintiffs. The deliberative process privilege extends to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," and thus protects the United States Attorney's letter withheld here. *See Klamath Water Users*, 532 U.S. at 8, 121 S.Ct. 1060.

Plaintiffs claim that the letter is not predecisional, but rather post-decisional because the "DOJ never prosecuted Plaintiffs" and the letter merely "memorializes the U.S. Attorney's decision *not* to prosecute Plaintiffs." (Pls.' Br. at 12–13 (emphasis in original).) However, as the Government notes, the decision to prosecute criminal tax matters formally lies with the Tax Division of the Department of Justice and not with the United States Attorney. *See* 28 C.F.R. § 0.70. The two Keys Decla-

rations demonstrate that the withheld letter contained the United States Attorney's analysis and recommendations to the IRS's Special Agent in Charge for Criminal Investigations, and as such preceded the determination of the Department of Justice not to prosecute. The letter, according to the IRS, "was written for purposes of making a determination as to whether to pursue a grand jury investigation and subsequent litigation against the plaintiffs." (Second Keys Decl. at ¶ 24.) The DOJ's ultimate decision not to prosecute does not somehow waive the deliberative privilege. *See Cuccaro*, 770 F.2d at 358.

Plaintiffs also assert that because it cannot be determined sufficiently from Defendants' submissions whether the letter was predecisional or only "memorialize[d]" an already-made decision not to prosecute, *in camera* review is needed. The Court disagrees. The *Vaughn* Index and the Keys Declarations provide sufficient detail for this Court to conclude that the letter is protected by the deliberative process privilege and therefore exempt from disclosure under FOIA Exemption 5.

### B. Work Product

 No matter the application of the deliberative process privilege, the letter is also protected from disclosure by the attorney work product doctrine. Exemption 5 incorporates the work product privilege. *See Klamath Water Users*, 532 U.S. at 8, 121 S.Ct. 1060; *FTC v. Grolier Inc.*, 462 U.S. 19, 23–24, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *Manna I*, 815 F.Supp. at 814. "Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). As is well established, the work product doctrine protects documents prepared in anticipation of litigation. *See, e.g., United States*

*v. Rockwell Int'l,* 897 F.2d 1255, 1266 (3d Cir.1990); *Manchester v. DEA,* 823 F.Supp. 1259, 1268 (E.D.Pa.1993).

▬ The letter withheld by the IRS was written by the United States Attorney for the District of New Jersey and, according to the Keys Declarations, prepared in anticipation of possible litigation against Plaintiff. (Keys Decl. at ¶ 21; Second Keys Decl. at ¶ 24–25.) As the Supreme Court has held, the work product doctrine protects "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears,* 421 U.S. at 154, 95 S.Ct. 1504. The withheld letter thus falls within the scope of the doctrine. Furthermore, "[t]he work-product privilege simply does not distinguish between factual and deliberative material" and therefore Exemption 5 protects work-product documents "regardless of their status as 'factual' or 'deliberative.'" *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.,* 819 F.2d 1181, 1187 (D.C.Cir.1987); *see also Manchester,* 823 F.Supp. at 1269 (holding that court "is not required to conduct an *in camera* review in order to determine that factual information is not reasonably segregable from privileged work product information, when, as here, the affidavits and index satisfy the court that any factual information is incidental to, and bound with, privileged work product"); *Manna I,* 815 F.Supp. at 814 (stating that "factual work-product materials are immune from disclosure" under FOIA). Defendants have met their burden to show that the withheld letter was prepared in anticipation of litigation, and

therefore is exempt from disclosure as work product as well as pursuant to the deliberative process privilege. The IRS properly withheld the document from Plaintiffs under Exemption 5.

## VI. The IRS Properly Withheld Documents Pursuant to FOIA Exemption 7(C)

▬ FOIA Exemption 7 precludes disclosure of information prepared for law enforcement purposes, subject to certain conditions. 5 U.S.C. § 552(b)(7). With regard to certain documents withheld from Plaintiffs, the IRS asserts Exemption 7(C), which covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* Plaintiffs do not dispute that the IRS is a law enforcement agency with regard to the information Plaintiffs seek and that the information was prepared for law enforcement purposes related to the civil and criminal investigations of Plaintiffs. This Court agrees, and finds that "[t]he IRS has the requisite law enforcement mandate and the affidavits presented in this case establish a rational nexus between enforcement of a federal law and the documents for which the exemption is claimed." *See Lewis v. IRS,* 823 F.2d 375, 379 (9th Cir. 1987).

▬ The IRS has withheld 21 pages in full and 357 pages in part pursuant to Exemption 7(C).[8] The IRS asserts that

---

**8.** The IRS has withheld TFRP file pages 45, 110, and 447 in part, and CI file pages 75, 78, 81, 339–42, 343–44, 346–48, 349–50, 352, 353, 354–55, 364–69, 373–83, 390–91, 393, 395, 400, 410–12, 414–16, 418–22, 429, 430–33, 436–37, 441–46, 452–53, 463–68, 475–76, 514, 522–23, 526, 535, 608, 622, 630–31, 634, 636–37, 649–56, 659–67, 786–819, 1173, 1245, 1247–50, 1252, 1254, 1259–60, 1292–1332, 1334–52, 1354–68, 1581, 1584–91, 1593–1605, 1802, 1804, 1810, 1813, 1931, 1942, 1951, 2029, 2030–31, 2032–33, 2070, 2304–24, 2326–43, 2345–80, 2383, 2385,

these documents contain references to "persons who are not targets of investigations but, instead, were merely mentioned in law enforcement files." (Keys Decl. at ¶ 25.) Therefore, the documents were withheld to protect against disclosure of personal information of third parties. Plaintiffs assert that disclosure of the withheld documents would not constitute an unwarranted invasion of privacy. "In determining whether the privacy exemption of 7(C) is appropriately invoked, the court must engage in a *de novo* balancing test: weighing the public benefit which would result from disclosure against the privacy interest and the extent to which it is invaded." *Cuccaro*, 770 F.2d at 359; *see also Carp*, 2002 WL 373448, at *5 (stating in FOIA case against IRS that in assessing withholding under Exemption 7(C), "a court must balance the public interest in the disclosure of third-party information with the privacy interest of those third parties"). This Court has recognized that "individuals associated with a criminal investigation, including suspects, witnesses, interviewees and investigators, possess a privacy interest cognizable under Exemption 7(C) in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation." *Manna II*, 832 F.Supp. at 877 (citing *Landano v. U.S. Dep't of Justice*, 956 F.2d 422, 426 (3d Cir.1992), *vacated in part on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993)). Disclosure of the names of such individuals could "result in embarrassment and harassment." *Manna III*, 51 F.3d at 1166 (quoting *McDonnell v. United States*, 4 F.3d 1227, 1255 (3d Cir.1993)).

Review of the Keys Declarations and the *Vaughn* Index indicates that documents from the TFRP and CI files which refer-

2387–97, 2399–2402, 2404–15, and 2417–22

enced third-parties were redacted by the IRS, where possible, to withhold only private third-party information. The IRS made redactions "only where disclosure would reveal the personal information of third parties and such disclosure would result in an unwarranted invasion of the third party's personal privacy." (Second Keys Decl. at ¶ 29.) Thus, of the 378 pages over which the IRS has asserted Exemption 7(C), only 21 were withheld completely. The remaining 357 were redacted to the extent necessary to protect third-party privacy and were disclosed to Plaintiffs in part.

■ Plaintiffs contend that some of the completely withheld or partially withheld documents "do not appear to concern third-parties at all and instead appear to *only* concern the Plaintiffs." (Pls.' Br. at 18 (emphasis in original).) However, even if a document "concerns" only Plaintiffs, any third-party information nonetheless contained in that document would be properly withheld pursuant to Exemption 7(C). The "names and addresses of private individuals which appear in the investigative files of government agencies are generally exempt from disclosure unless that information is necessary to confirm or refute compelling evidence of agency misconduct." *Carp*, 2002 WL 373448, at *5 (citing *SafeCard*, 926 F.2d at 1206). Plaintiffs do not allege any agency misconduct justifying disclosure of such private third-party information.

This Court accepts the IRS's good faith representation, supported by the record, that "the redactions made were limited in scope and confined to the personal information of third parties (primarily their names, addresses, telephone numbers, and social security numbers), and that this is evident when the redacted part is viewed in whole or in part.

in the context of the information released." (Second Keys Decl. at ¶ 30.) After careful review of the *Vaughn* Index, this Court concludes that the IRS properly redacted certain documents, including records that primarily "concern" Plaintiffs, to avoid disclosure of private third-party information such as addresses and Social Security numbers. "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544. Defendants have met their burden that such redactions and other withholding serve to prevent an unwarranted invasion of privacy. Furthermore, any public interest in disclosure does not outweigh the privacy interests involved. The public interest in disclosure here is minimal; the primary value of disclosure is to Plaintiffs, not the public at large.

Plaintiffs also argue that disclosure of documents concerning solely Plaintiffs is required under the Privacy Act. However, just as with Bank Secrecy Act report information, the IRS has exempted law enforcement records from disclosure under the Privacy Act pursuant to 5 U.S.C. §§ 552a(j)(2) and (k)(2). Internal Revenue Service, Privacy Act of 1974, System of Records Notice, Treasury/IRS 42.001, 66 Fed.Reg. 63784, 63835–36 (Dec. 10, 2001); *id.*, Treasury/IRS 42.008, 66 Fed.Reg. 63784, 63836; *id.*, Treasury/IRS 46.002, 66 Fed.Reg. 63784, 63842–43. Thus, the IRS properly withheld these law enforcement documents pursuant to the Privacy Act.

 Next, Plaintiffs argue that because the IRS provided to Plaintiffs a list of third parties that the agency contacted during its investigations of Plaintiffs, withholding of documents regarding such third party contacts would not result in an unwarranted further invasion of privacy. However, review of the record indicates that the third-party contact list provided to Plaintiffs appears to include only the names of the third-party contacts, and not other identifying or personal information. (Keys Decl. at ¶ 32.) Thus, further redaction by the IRS of documents to withhold such identifying information was appropriate. For example, Plaintiffs challenge the withholding in part of CI file pages 377–79, which contain a "[c]opy of a third-party witness's business card information and Memorandum of Contact dated March 1, 2004 wherein witness submitted to an interview with Special Agents involved in the criminal investigation of plaintiff." (*Vaughn* Index at 30.) While IRS rules appear to allow for disclosure of the names of third-party contacts, further disclosure of identifying information such as would be found on a witness's business card would invade personal privacy such that withholding was appropriate.

 With regard to some documents, Plaintiffs assert that the documents were not compiled for law enforcement purposes but for the IRS's "general monitoring of private individual's activities." (Pls.' Br. at 19.) The Third Circuit, following the D.C. Circuit, has indeed held that to qualify as "compiled for law enforcement purposes," documents must have been prepared by the agency "act[ing] within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Davin*, 60 F.3d at 1054 (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982)). However, even if the withheld information was in documents which "appear to be the type of records which are routinely generated by the IRS without regard to whether a taxpayer has committed any civil or criminal violation (*i.e.*, as part of the IRS' tax collection

function)" (Pls.' Br. at 19–20), they still were compiled by the IRS in its law enforcement capacity for purposes of investigating Plaintiffs. The Keys Declarations and the *Vaughn* Index repeatedly assert this reason for compiling the information, and sufficiently link the compilation of the records with the investigations of Plaintiffs. *See Davin,* 60 F.3d at 1056–57.

In any event, many of the documents cited by Plaintiffs as involving "general monitoring" in fact expressly stem from law enforcement. For example, Plaintiffs challenge the withholding of CI file pages 75, 78, and 81, which contain "Integrated Collection System (ICS) history transcript information collected with respect to Realty Research Corporation." (*Vaughn* Index at 7.) In arguing that this information is "routinely generated," Plaintiffs appear to rely on the IRS's description of the ICS in the *Vaughn* Index as "one of two computer systems maintained by the [IRS] specifically dedicated to collection processing." (*Id.*) Yet the very next sentence in the description states that "ICS history transcripts document the [IRS]'s *criminal investigation activities* with respect to a taxpayer." (*Id.* (emphasis added).) Defendants have met their burden to establish that this information was compiled for law enforcement purposes, and that personal information of third parties was properly redacted. Other documents not directly related to law enforcement investigations, such as CI file pages 352 and 353– "Auto Track database information" which contained addresses and social security numbers of third parties—were nonetheless generated and compiled to aid in the investigation of Plaintiffs, and therefore constitute information "compiled for law enforcement purposes." (*Vaughn* Index at 17–20.)

 Plaintiffs also contend that some withheld documents "do not appear to involve any privacy interest" at all. (Pls.' Br. at 20.) Inspection of the IRS's Declarations and the *Vaughn* Index belies Plaintiffs' contentions. Records such as the "Auto Track database information," cited by Plaintiffs in this regard, were redacted by the IRS solely to remove personal identifying information of third parties, such as home addresses, cell phone numbers, and social security numbers. (*See, e.g., Vaughn* Index at 17, 19, 21.) To take another example, Plaintiffs challenge the withholding in part of CI file page 373, which consists of an "Express mail envelope." (*Vaughn* Index at 26.) According to the *Vaughn* Index, this page contained, as one might expect to see on an express mail envelope, "[p]ersonal contact information of addressee." (*Id.*) Such personal identifying information of a third party may be withheld by the IRS under Exemption 7(C), and the third party's interest in keeping the address private outweighs the limited public interest in disclosure. Similarly, Plaintiffs challenge the withholding in full of a printout from "Drivers of the Nation," CI file page 1173, as not implicating privacy interests. (*Vaughn* Index at 73.) The Government describes this page as containing "personal information of a third party including the third party's address, age, SSN, Driver License Number, State in which the License was issued and when the license expires." (*Id.*) Plaintiffs simply cannot be heard to argue that such information is not of the "type . . . which would trigger any reasonable expectation of privacy on the part of the individuals to whom the documents pertain." (Pls.' Br. at 20.)

Finally, Plaintiffs argue that *in camera* review of the documents withheld pursuant to Exemption 7(C) is required. This Court disagrees. The Court finds that the Keys Declarations and the *Vaughn* Index are sufficiently specific such that *in cam-*

*era* review is not required to "rule out the possibility that disclosable information is being withheld from Plaintiffs." (Pls.' Br. at 21.) Defendants' submissions "demonstrate with reasonable specificity why the documents are exempt," the IRS's claim of exemption "is not contradicted in the record," and the Court finds "no evidence of bad faith on the part of the agency." *Manna II,* 832 F.Supp. at 874. The IRS's repeated reviews and disclosures of additional information in response to Plaintiffs' arguments at the administrative level and here demonstrate the agency's good faith, and Plaintiffs have pointed to no evidence of bad faith. Thus, *in camera* review is not warranted.

### VII. The IRS Properly Withheld Williams's Time Records Pursuant to Exemption 6

■ Finally, Plaintiffs challenge the IRS's withholding of time records prepared by Revenue Officer Williams, approximately 711 pages, during the period in which she handled the civil TFRP investigation of Plaintiffs. FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Here, Defendants assert that Williams has a personal privacy interest in her time sheets, as they include the time she spent "investigating taxpayers other than plaintiffs," and also any time she reported "as sick leave, vacation

time, training, and for other administrative purposes." (Second Keys Decl. at ¶ 37.)

■ Courts use roughly the same balancing test applied under Exemption 7(C), weighing the public interest against the privacy interest, to determine whether an agency has properly asserted Exemption 6. *See, e.g., Dep't of Air Force v. Rose,* 425 U.S. 352, 372–73, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Exemption 6 is not a "blanket exemption" for personnel files, *id.* at 371, 96 S.Ct. 1592, and the exemption is narrower than that provided by Exemption 7(C) because Exemption 6 requires a *"clearly* unwarranted" invasion of privacy, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs,* 135 F.3d 891, 898 (3d Cir. 1998). The public interest to be considered in the balancing test under Exemption 6 is "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Sheet Metal Workers' Int'l,* 135 F.3d at 903 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994)).

Based on the Keys Declarations and the *Vaughn* Index, this Court finds that disclosure of Williams's time sheets, which are "similar" to personnel files, would constitute a clearly unwarranted invasion of her personal privacy.[9] Plaintiffs argue that

9. Plaintiffs attack the sufficiency of Keys's Declaration because she stated that disclosure *"could* reasonably be expected to constitute an unwarranted invasion of personal privacy." (Keys Decl. at ¶ 31 (emphasis added).) As noted, the statutory standard for Exemption 6 states requires that disclosure *"would* constitute a *clearly* unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (em-

phasis added). While Keys indeed did not state the correct standard in this portion of her Declaration, she stated it correctly elsewhere in her Declarations (Keys Decl. at ¶ 29; Second Keys Decl. at ¶¶ 35, 36.) Semantic differences aside, this Court is aware of the proper standard, and that Exemption 6 is narrower than Exemption 7(C). The Court has independently assessed Defendants' affi-

there is a public interest in the disclosure of Williams's time records to "shed light on the operations of the IRS in conducting investigations of taxpayers." (Pls.' Br. at 30.) As Plaintiffs argue, "the public has an interest in whether public servants carry out their duties in an efficient and law-abiding manner." *Columbia Packing Co. v. U.S. Dep't of Agric.*, 563 F.2d 495, 499 (1st Cir.1977). However, disclosure of Williams's time sheets would do little to serve such an interest, and certainly would not "contribute[ ] *significantly* to public understanding of the operations or activities of the government." *Sheet Metal Workers Int'l*, 135 F.3d at 903 (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 495, 114 S.Ct. 1006) (emphasis added). Instead, disclosure would primarily serve Plaintiffs' particular private interests as individual taxpayers. Disclosure would not be "instrumental in shedding light on the operations of government." *Lewis v. U.S. Envt'l Protection Agency*, Civil Action No. 06–2660, 2006 WL 3227787, at *6 (E.D.Pa. Nov. 3, 2006) (citing *Sheet Metal Workers Int'l*, 135 F.3d at 903). The fact that Williams is a public employee does not so lessen her expectation of privacy that disclosure of her time sheets would be appropriate, and her privacy interest outweighs the relatively minimal public interest in the manner in which Williams spent her time during the investigation of Plaintiffs.

Plaintiffs also argue that because the time sheets were "created as a result of Williams's investigation of Plaintiffs and therefore pertain to Plaintiffs," they should have been disclosed under the Privacy Act. However, the time sheets were created not as a result of the investigation of Plaintiffs *per se*, but pursuant to her

conditions of employment with the IRS and concerned all of Williams's job functions, not just those pertaining to the investigation of Plaintiffs. Williams's time sheets certainly do not constitute "records about the Plaintiffs," and may not be disclosed under the Privacy Act without Williams's consent.

Finally, Plaintiffs argue that Williams's records could be segregated or redacted such that personal information could be removed and only time information regarding Williams's work on the investigation of Plaintiffs would be disclosed. Plaintiffs rely on *Vosburgh v. IRS*, a case where the IRS appears to have disclosed redacted versions of an IRS employee time sheet such that personal information was removed. Civil Action No. 93–1493, 1994 WL 564699 (D.Or. July 5, 1994). The court in *Vosburgh* stated that the IRS "claims Exemption 6 as the basis for withholding certain information in Special Agent Welch's time records such as the names of third parties, the amount of time spent by the Special Agent on the investigation of such parties, and the Special Agent's Social Security Number ("SSN")." *Id.* at *3. Plaintiffs argue for the same redaction approach here.

However, the *Vosburgh* court concluded simply that "Exemption 6 therefore exempts Special Agent Welch's time records from disclosure." *Id.* Even though the court discussed third-party information, its holding was not so limited. Moreover, even if the IRS might have chosen to disclose time records in this one case, such disclosure fails to demonstrate that disclosure of redacted personal time records would *per se* not constitute a clearly unwarranted invasion of personal privacy. In addition, considering the extensive

davits and the *Vaughn* Index and concludes Defendants have met their burden to show that disclosure of Williams's time sheets

would constitute a clearly unwarranted invasion of personal privacy.

amount of personal information contained in the time sheets at issue here, Williams's time sheets may not be reasonably segregated such that only information which would not clearly invade Williams's personal privacy would be disclosed. *See* 5 U.S.C. § 552(b) ("Any *reasonably segregable portion* of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.") (emphasis added).

This Court nonetheless agrees with the *Vosburgh* court's holding that disclosure of information in time records "could have detrimental effects on the public interest involved by exposing the agent to unwarranted harassment." *Id.* This Court concludes that the public interest in disclosing the time records, either in total or only the redacted records concerning time spent on the investigation of Plaintiffs and absent any of Williams's personal information, is outweighed by Williams's personal privacy interest in her time records—records which were not created as part of the investigation, but rather in the normal course of her employment.

The Supreme Court has held that "we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, '[t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (quoting H.R.Rep. No. 1497, 1966 U.S.S.C.A.N. 2418, 2428). Williams's time sheets-personal records which apply to a particular individual-qual-

ify as files covered under Exemption 6, and this Court determines that "release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Id.* The IRS properly withheld Williams's time sheets in full pursuant to FOIA Exemption 6.[10]

## VIII. This Court Will Dismiss Counts Three, Four, and Five of Plaintiffs' Complaint

Pursuant to the above analysis, this Court will grant Defendants' motion for summary judgment with respect to Count One (FOIA) and Count Two (Privacy Act) of Plaintiffs' Complaint. The remaining Counts of Plaintiffs' Complaint were brought under sections of the Internal Revenue Code that do not confer a private right of action. I.R.C. §§ 6103, 6203, 7602(c). Plaintiffs concede that these statutes do not allow them a private right of action, but argue that these statutes permit disclosure under FOIA. Because this Court will grant summary judgment to Defendants on Plaintiffs' FOIA claim, it therefore will also dismiss Counts Three, Four, and Five.

### Conclusion and Order

For the foregoing reasons, it is ORDERED that Defendants' motion for summary judgment (Docket No. 10) is hereby GRANTED in its entirety. Judgment is hereby ENTERED in favor of Defendants. The Clerk shall mark this case closed.

---

**10.** Because withholding in full was proper pursuant to Exemption 6, this Court need not address the IRS's alternative argument that withholding in part would be proper pursuant to Exemption 3 in conjunction with I.R.C. § 6103(a) in that disclosing the time sheets would impermissibly disclose the return information of third-party taxpayers examined by Williams during the relevant period.